UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:17-CV-00145-TBR

TIFFANY HAM,                                                                    PLAINTIFF

v.

MIDLAND FUNDING, LLC,                                                      DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Midland Funding, LLC's motion to dismiss for failure to state a claim, [DN 7.] Plaintiff Tiffany Ham responded, [DN 10], and Midland replied, [DN 11.] Fully briefed, this matter is now ripe for decision. For the reasons stated herein, Defendant's motion is **GRANTED**.

BACKGROUND

The material facts of this case are not in dispute. This case arises out of the credit card debt of Plaintiff, Tiffany Ham, which Defendant Midland Funding, LLC ("Midland") purchased from Synchrony Bank, the issuer of Ham's credit card. [DN 1 at 2 (Complaint).] Midland filed suit against Ham in McCracken County, Kentucky Circuit Court seeking to collect Ham's charged-off credit card debt. [*Id.*] Midland obtained a Default Judgment against Ham on August 26, 2016. [DN 1-2 at 2 (Default Judgment).] Therein, the state court wrote:

> IT IS HEREBY ORDERED AND ADJUDGED that the Plaintiff is granted Judgment against the Defendant, TIFFANY HAM, for the sum of $5,146.31, plus court costs as of the date of judgment in the amount of $228.00, and costs for the filing of any executions, including judgment liens and garnishments, which may issue hereafter and until this Judgment is satisfied.
> There being no just reason for delay, this Judgment is final and appealable.

[*Id.*] On September 16, 2016, Midland filed a bill of costs itemizing $228.00 worth of costs it incurred during the state court lawsuit. [*Id.*] Next, on September 28, 2016, Midland's counsel

1

filed and served an Affidavit For Order Of Wage Garnishment ("Garnishment Affidavit") on Ham's employer, Hayes Brothers Trucking. [*Id.*; DN 7 at 3; DN 7-2; DN 7-3.] In the Garnishment Affidavit, Midland sought $5,375.31, which represents the $5,146.31 plus the court costs of $228.00, in addition to "Probable Court Costs" of $20.00. [DN 1 at 3; DN 7-2 at 2.]

Ham brought the instant suit on September 25, 2017 alleging that Midland violated the Fair Debt Collection Practices Act ("FDCPA") by including in the Garnishment Affidavit the "Probable Court Costs" amount of $20.00. [*Id.*] According to Ham, Midland had no legal right to collect the $20.00 amount, and therefore attempting to do so was a misrepresentation in connection with the collection of a debt in violation of the FDCPA. [*Id.*] Thereafter, Midland made the instant motion to dismiss Ham's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [DN 7 (Motion to Dismiss).]

STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v.*

*Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

DISCUSSION

**A. The Fair Debt Collection Practices Act ("FDCPA")**

The FDCPA is an "extraordinarily broad" statute passed by Congress "to address the widespread and serious national problem of debt collection abuse." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) (quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)). "The FDCPA is a strict-liability statute: A plaintiff does not need to prove knowledge or intent, and does not have to have suffered actual damages." *Stratton v. Portfolio Recovery Assocs.*, LLC, 770 F.3d 443, 448-49 (6th Cir. 2014) (internal citations omitted). Rather, to prevail on an FDCPA claim, a plaintiff must establish four elements: (1) the plaintiff must be a "consumer" as defined by the FDCPA; (2) "the debt must arise out of transactions that are primarily for personal, family or household purposes"; (3) the defendant must be a "debt collector" as defined by the FDCPA; and (4) the "defendant must have violated one of the specific statutory provisions regarding debt collection communication and/or activity." *Wallace v. Manley Deas Kochalski LLC*, Civil Action No. 3:13-CV-00031-H, 2013 WL 3338687, at *2 (W.D. Ky. Jul. 2, 2013) (citing *Wallace v. Wash. Mut. Bank*, 683 F.3d 323, 326 (6th Cir. 2012))

(internal quotation marks omitted). If the plaintiff establishes these elements, 15 U.S.C. § 1692k permits her to recover statutory or actual damages, along with costs and attorney's fees.

Here, Ham specifically asserts that Midland violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692f. [DN 1 at 3.] Section 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." It then provides a nonexclusive list of actions that may violate FDCPA, including: "[t]he false representation of ... the character, amount, or legal status of any debt[,] or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," 15 U.S.C. § 1692e(2) (internal subdivisions omitted); "[t]he threat to take any action that cannot be legally taken or that is not intended to be taken," *id.* § 1692e(5); or "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10). Similarly, § 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," *id.* § 1692f(1).

Though Ham brings her "FDCPA claims under both the false-or-misleading-representations section, § 1692e, and the unfair-practices section, § 1692f . . . both sets of claims reflect the same basic allegation." *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. 2015). Ham's core allegation is that Midland violated the FDCPA by attempting to collect the $20.00 in garnishment costs, an amount it was not legally entitled to recover.

In its motion to dismiss Ham's complaint, Midland does not dispute that Ham has plausibly alleged the first three elements of a FDCPA claim. Rather, Midland's arguments focus

on the fourth element; specifically, Midland argues that it did not violate any provisions of the FDCPA because it was fully entitled to recover the $20.00 amount of garnishment expenses from Ham pursuant to both the state court Default Judgment and Kentucky law. [*See* DN 7 at 1.]

**B. The McCracken County Default Judgment**

As the Court explained above, Midland obtained a default judgment against Ham in McCracken County Circuit Court on August 26, 2016. [DN 1-2 at 2.] The Default Judgment stated:

> IT IS HEREBY ORDERED AND ADJUDGED that the Plaintiff is granted Judgment against the Defendant, TIFFANY HAM, for the sum of $5,146.31, plus court costs as of the date of judgment in the amount of $228.00, ***and costs for the filing of any executions, including judgment liens and garnishments, which may issue hereafter*** and until this Judgment is satisfied.
> There being no just reason for delay, this Judgment is final and appealable.

[*Id.* (emphasis added).] According to Midland, the above underlined portion of the Default Judgment awarded it "all of the costs associated with the issuance of a garnishment . . . which necessarily includes [two] $10.00 fees" which, together, equal $20.00. [DN 7 at 7.] First, Kentucky Rule of Civil Procedure 3.02 ("CR 3.02") provides that a litigant seeking to have a garnishment issued must pay a fee of $10.00 to the circuit clerk at the time service is requested. Ky. CR 3.02(2)(i). Second, KRS § 425.501, titled "Proceedings for obtaining order of garnishment," states that "[t]he order of garnishment shall be served on the persons named as garnishees . . . along with a processing fee in the amount of ten dollars ($10) paid by the judgment plaintiff." Ky. Rev. Stat. Ann. § 425.501(3). The purpose requiring the judgment plaintiff, here, Midland, to pay a $10.00 fee paid to the garnishee, here, Ham's employer, is to cover "the garnishee's costs of delivering or mailing the order of garnishment to the judgment debtor," here, Ham. [DN 7 at 5.] Therefore, "every time a judgment creditor seeks a garnishment, it costs the judgment creditor $20.00 – $10 paid to the clerk, and $10 paid to the

5

garnishee." [*Id.*] Midland argues that, because the Default Judgment awarded it "costs for the filing of any executions, including judgment liens and garnishments, which may issue hereafter," it had a legal right to recover the entire $20.00 amount. [*Id.*]

In her response, Ham does not dispute that Kentucky law requires the judgment creditor to pay a $10 fee to the clerk and a $10 fee to the garnishee for a total of $20.00. [DN 10 at 7–8 (Ham's Response).] What Ham does take issue with, however, is whether Midland had a legal right to recover either or both of those costs. **[***See id.* at 8.**]** Ham makes several arguments as to why Midland cannot recover such costs and why attempting to do so was a violation of the FDCPA. The Court will address each of those arguments, along with Midland's, below.

1. **Midland's State Court Complaint**

First, Ham contends that Midland did not request costs related to garnishment in its state court complaint, and therefore that the Default Judgment could not properly award Midland those costs. [*Id.* at 8–9.] In support of this argument, Ham cites Kentucky Rule of Civil Procedure 54.03, which provides that "[j]udgment by default for want of appearance shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Ky. CR 54.03(1). According to Ham,

> [t]he plain, mandatory, statement in the text language of CR 54.03(2) makes the provision of the Default Judgment awarding Midland unliquidated future "costs for the filing of any executions" a nullity and unenforceable as a matter of law since Midland did not plead or include a demand for the future "costs for the filing of any executions" in its complaint.

[DN 10 at 8.]

In its reply, Midland argues that, pursuant to the *Rooker-Feldman* doctrine, the Court does not have jurisdiction to consider whether language in the state court Default Judgment is "a nullity and void," as Ham asserts it is. [DN 11 at 3 (quoting DN 10 at 9).] "The *Rooker–Feldman*

doctrine has evolved from two Supreme Court cases which establish that 'lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings.'" *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (quoting *Pieper v. Am. Arbitration Ass'n,* 336 F.3d 458, 460 (6th Cir. 2003)). The doctrine only applies in narrow circumstances, however. Specifically, *Rooker-Feldman* "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

"In determining the applicability of the *Rooker–Feldman* doctrine, federal courts 'cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint,' but instead 'must pay close attention to the *relief* sought by the federal-court plaintiff.'" *Hood*, 341 F.3d at 597 (quoting *Bianchi v. Rylaarsdam,* 334 F.3d 895, 900 (9th Cir. 2003)). With regard to Ham's argument that the state court language awarding garnishment costs is void, Ham requests that the Court find just that: that the state court issued an improper award of costs, that Midland therefore had no legal right to collect them, and therefore that attempting to do so was a violation of the FDCPA.

However, reviewing the correctness of a state court judgment is precisely what *Rooker-Feldman* prohibits district courts from doing. In order for Ham to succeed on this argument, the Court would necessarily have to agree with Ham that the state court judgment was somehow invalid because the court improperly awarded costs that were not recoverable. *Rooker-Feldman* bars the Court from making such a determination. Rather, this is an issue that should have been challenged directly, by appealing the state court judgment or making a motion to reconsider or to vacate in state court. Ham did not do so, and this is not the proper forum to make these

arguments now. Therefore, the Court will not consider this argument. *See, e.g.*, *Edwards v. Thornton*, 413 F. App'x 802, 804 (6th Cir. 2011) ("Thornton's transfer of that title was a strict execution of the state-court judgment. The Edwards companies' claim—that Thornton unconstitutionally transferred title because he should have known that the state-court judgment was void—is an attack on the judgment itself, because there is no method that Thornton or Harvest could have used to enforce the judgment that would not have given rise to this claim. As such, *Abbott* applies, and the claim is subject to *Rooker–Feldman*."); *Wilson v. Asset Acceptance, LLC*, 864 F. Supp. 2d 642, 645 (E.D. Ky. 2012) (citing *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010) ("Any challenge that Plaintiff may wish to make as to the judgment itself is barred by the *Rooker–Feldman* doctrine.").[1]

Though the Court cannot consider Ham's argument that certain language in the state court judgment is "a nullity and void," [DN 10 at 9], Ham goes on to make multiple alternative arguments about why Midland did not have a legal right to collect the $20.00 even if the Default Judgment *is* valid and enforceable. The Court can and will address those arguments. *See Rivera v. Ragan & Ragan, P.C.*, No. CIV. A. 10-1619, 2010 WL 2635790, at *4 (E.D. Pa. June 25, 2010) (citing cases) (Explaining that *Rooker-Feldman* does not apply when a plaintiff "does not challenge the judgment against him in state court, but rather, only claims that [defendant]'s collection practices violated sections of the FDCPA."); *see also Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) ("Plaintiff here does not complain of injuries caused by this state court judgment, as the plaintiffs did in *Rooker* and *Feldman*. Instead, after

---

[1] Ham does not successfully refute Midland's argument in her response. Rather, she merely repeats her argument that "the language awarding [Midland] the right to recover future 'costs for the filing of any executions' in the Default Judgment is a nullity and void." [DN 10 at 9.] Accordingly, the Court finds unpersuasive Ham's statement that "[t]he claims in this case do not take issue with the enforceability of the Default Judgment." [*Id.* at 24.] This particular argument, at least, does exactly that.

the state court judgment, Plaintiff filed an independent federal claim that Plaintiff was injured by Defendant when he filed a false affidavit."); *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 798 (S.D. Ohio 2006) ("Plaintiffs' alleged injuries here are not the result of the state court judgments themselves, but rather from the allegedly illegal practices Defendants used to obtain those state court judgments.").

2. **The Default Judgment's Award of "Costs for the Filing of Any Executions"**

Ham's second argument is that, even if the Default Judgment did correctly and intentionally award Midland the right to recover the garnishment fees, that award only consisted of the $10.00 fee paid to the clerk, but not the $10.00 fee paid to the garnishee. [DN 10 at 7–8.] Ham bases this argument on the language in the Default Judgment stating that Midland is granted "costs for the ***filing*** of any executions . . . including garnishments." [*Id.* at 7 (quoting DN 1-2 at 2) (emphasis added).] According to Ham, the "costs for the filing" language refers only to the $10.00 fee which must be paid to the circuit clerk at the time service of the garnishment is requested. [*Id.* at 7–8]. On the other hand, Ham argues, the $10.00 processing fee which must be paid to the garnishee "is not incurred upon filing the garnishment with the court that entered the judgment," and therefore it is not included within the purview of the "costs for the *filing*" of a garnishment. [*Id.* at 8.]

Midland disagrees. It argues that

> [t]he "costs" for the issuance of a garnishment that the McCracken circuit court explicitly awarded are indisputably $20.00 because Kentucky law requires that a judgment creditor pay $20.00 before a garnishment can be filed and issued in order to execute on a judgment, consisting of a $10.00 fee paid to the clerk and a $10.00 fee paid to the garnishee.

[DN 7 at 5.] According to Midland, Ham's argument that the Default Judgment's language extends only to the $10.00 fee paid to the clerk, "ignores the requirement that a judgment

9

creditor cannot have a garnishment filed and issued for execution without paying both the $10.00 fee to the clerk and the $10.00 fee to the garnishee." [*Id.* at 5–6.] Moreover, Midland argues that, by "using the plural 'costs' and the word 'for,' the Default Judgment awarded Midland all 'costs' associated with filing a garnishment, which includes both the $10.00 fee paid to the garnishee and the $10.00 fee paid to the circuit court clerk." [*Id.* at 6.] Importantly, "[t]he mere filing of a garnishment without payment of the $10.00 fee to the garnishee violates Kentucky law, and renders the garnishment useless for executing on a judgment." [*Id.*]

Midland further argues that reading the Default Judgment to award only one of the two $10.00 fees required for an effective garnishment in Kentucky would fail to give full effect to the Default Judgment. Indeed, in Kentucky, "[i]t is well-established that a judgment or order must be interpreted so as to give effect to both the express and implied intent of the court. *Jones v. Ken Builders Supply*, No. 2011-CA-001246-WC, 2011 WL 7268627, at *4 (Ky. Ct. App. Feb. 10, 2011) (citing *Toms v. Holmes,* 171 S.W.2d 245 (Ky. 1943) and *Farmer v. Cassinelli,* 303 S.W.2d 555 (Ky. 1957)). Bearing this principle in mind, the issue for the Court to determine is whether the language of the Default Judgment made the second $10.00 fee, which must be paid to the garnishee, recoverable.

The Court finds that, to give full effect to both the express and implied intent of the state court in awarding the "costs for the filing of any executions, including . . . garnishments, which may issue hereafter and until this Judgment is satisfied," the most logical and reasonable interpretation is that the Default Judgment awards Midland all costs *associated* with issuing an effective garnishment. This necessarily includes both $10.00 fees. The state court used broad language in the Default Judgment, awarding Midland its "costs for the filing of *any executions*, *including* judgment liens and *garnishments*, whic*h may issue hereafter and until this Judgment is*

*satisfied*." [DN 1-2 at 2 (emphasis added).] Because Kentucky law requires both that a $10.00 fee be paid to the circuit clerk, Ky. CR 3.02(2)(i), and that a $10.00 processing fee be paid to the garnishee, Ky. Rev. Stat. Ann. § 425.501(3), the Court finds that the "costs for the filing of any . . . garnishments, which may issue hereafter and until this Judgment is satisfied," necessarily includes both costs required for issuing an effective garnishment. Accordingly, the Court agrees with Midland that, pursuant to the Default Judgment, Midland was awarded the $20.00 in garnishment costs.

### 3. Midland's Bill of Costs

Ham's third argument, however, is that even if the Default Judgment did award Midland both $10.00 fees, as the Court finds it did, Midland did not file a proper bill of costs pursuant to CR 54.04 and therefore never properly became entitled to collect *either* of the $10.00 amounts under Kentucky law. [DN 10 at 10–15.] In Kentucky, "[t]he successful party in any action shall recover his costs, unless otherwise provided by law." KRS § 453.040(1)(a). Kentucky Rule of Civil Procedure 54.04 provides the proper procedure parties must follow to recover their costs in Kentucky courts:

> A party entitled to recover costs shall prepare and serve upon the party liable therefor a bill itemizing the costs incurred by him in the action, including filing fees, fees incident to service of process and summoning of witnesses, jury fees, warning order attorney, and guardian ad litem fees, costs of the originals of any depositions (whether taken stenographically or by other than stenographic means), fees for extraordinary services ordered to be paid by the court, and such other costs as are ordinarily recoverable by the successful party. If within five days after such service no exceptions to the bill are served on the prevailing party, the clerk shall endorse on the face of the judgment the total amount of costs recoverable as a part of the judgment. Exceptions shall be heard and resolved by the trial court in the form of a supplemental judgment.

CR 54.04(2).

The parties agree that, after Midland obtained the Default Judgment in state court, it filed a bill of costs itemizing the costs it had incurred up until the date the Default Judgment was issued in the amount of $228.00. [DN 10 at 10; DN 10-2 at 2.] The parties also agree that the bill of costs for $228.00 did not include the $20.00 in post-judgment garnishment costs. [DN 10 at 10; DN 11 at 12.] Rather, the $228.00 amount comprised of a $178.00 filing fee and $50.00 for "Fees incident to service of process and summoning of witnesses," both of which were incurred before the Default Judgment was issued. [DN 10-2 at 2.] According to Ham, however, because the filing of a CR 54.04 bill of costs is required under Kentucky law, Midland was required to "file a supplemental Bill of Costs itemizing costs for filing or serving garnishments." [DN 10 at 10.] Because it did not do so, Ham contends that Midland was not legally entitled to collect the $20.00, and therefore that attempting to do so violated the FDCPA.

Midland asserts in its reply, however, that "Ham's argument that Midland was required to file a Ky. CR 54.04 bill of costs prior to seeking to collect <u>post-judgment</u> garnishment expenses is misplaced. The requirement for filing a CR 54.04 bill of costs is only applicable to <u>pre-judgment</u> costs." [DN 11 at 2 (emphasis in original).] According to Midland, the "collection of post-judgment garnishment expenses was governed by CR 69 and the Administrative Office of the Courts ("AOC") garnishment forms." [*Id.*]

The Kentucky Rule of Civil Procedure governing post-judgment garnishments is CR 69.02, titled "Post-judgment garnishment; service; answer; disposition of funds." CR 69.02 specifies how post-judgment garnishment orders are to be served on garnishees and states that "Expenses shall be recoverable as costs." Ky. CR 69.02(1). Next, the Kentucky AOC provides specific garnishment forms to be filled out which, at the time Midland filled out the form, included a space for judgment creditors to list their "Probable Court Costs." [*See* DN 7-4 (Order

of Wage Garnishment Form); DN 7-5 (Order of Garnishment (Non-Wage) Form).] The Kentucky Small Claims Handbook, which is provided by the Kentucky AOC and the Kentucky Office of the Attorney General, provides guidance on filling out the garnishment forms. In pertinent part, the Handbook states that "[t]here is a fee to have the garnishment issued" and that "[t]he garnishment fee . . . may be recoverable as costs and should be added to the amount requested in the affidavit and order of garnishment." [DN 7-7 at 5 (Small Claims Handbook Excerpt).] Though, as the parties agree, it takes a $10.00 fee paid to the clerk and a $10.00 fee paid to the garnishee, the Handbook merely states that "[t]here is a fee to have the garnishment issued," and does not expressly discuss either or both of the separate $10.00 fees. [*Id.*]

Midland construes the Handbook language as "instruct[ing] that the entire garnishment fee – which is $20.00 – should be included in the amount requested in the affidavit and the order of garnishment, which is exactly what Midland's collection counsel did in this case when it sought $20.00 in probable court costs." [DN 7 at 12.] According to Midland, contrary to Ham's argument, "[f]iling a CR 54.04 bill of costs is simply not the procedure for collecting post-judgment garnishment expenses." [DN 11 at 14.]

The Court agrees with Midland's argument that CR 54.04 applies only to the recovery of costs incurred up until the date a judgment is entered. There are multiple reasons for this conclusion. As an initial matter, the only costs CR 54.04 specifically lists as examples are prejudgment costs,

> including filing fees, fees incident to service of process and summoning of witnesses, jury fees, warning order attorney, and guardian ad litem fees, costs of the originals of any depositions (whether taken stenographically or by other than stenographic means), fees for extraordinary services ordered to be paid by the court, and such other costs as are ordinarily recoverable by the successful party.

CR 54.04(2). With regard to the general "such other costs as are ordinarily recoverable" phrase, the Court finds it useful to apply "the principle of *ejusdem generis,*" which provides that "the general term must take its meaning from the specific terms with which it appears." *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 F.3d 821, 833 (6th Cir. 2012) (citing *Allinder v. Inter–City Prods. Corp.,* 152 F.3d 544, 549 (6th Cir. 1998) ("According to the rule of *ejusdem generis,* when general words follow the enumeration of specific words in a statute, courts are to construe the general words in a manner that limits them to the same class of things enumerated by the preceding specific words.")). Here, the general "such other costs" language appears after a list of specific prejudgment costs. Accordingly, the Court finds that the "such other costs" language likewise refers to prejudgment costs.

Further, the Court can find no case, and Ham has cited none, applying CR 54.04 in the context of post-judgment garnishment costs or any other post-trial costs associated with executing a judgment. Indeed, the only cases Ham cites in her briefing appear to deal exclusively parties who failed to comply with CR 54.04 for purposes of obtaining their prejudgment costs. *See Stewart v. Murphy*, No. 2004-CA-000166-MR, 2005 WL 736624, at *3 (Ky. Ct. App. Apr. 1, 2005); *Ferrell v. Rudd*, No. 2005-CA-000530-MR, 2006 WL 305924, at *1 (Ky. Ct. App. Feb. 10, 2006).

Additionally, the distinguishing facts between the instant case and another FDCPA case the Court decided last year are especially instructive here. In *Hawksley v. Weltman, Weinberg & Reis Co., P.S.C.*, the defendant-creditor, WWR, "obtained summary judgment against [plaintiff-debtor] Hawksley 'for the principal balance of $3,235.77, plus its court costs incurred herein.'" No. 3:16-CV-00205-TBR, 2017 WL 63033, at *1 (W.D. Ky. Jan. 5, 2017). Unlike in this case, however, the state court judgment in *Hawksley* made no mention of an award of any post-

14

judgment judgment lien or garnishment costs. It only awarded the "court costs incurred herein," which, as the Court explained above, refers to prejudgment costs within the purview of CR 54.04.

Also unlike this case, WWR failed to file a bill of costs as required by CR 54.04. Rather, after it obtained the judgment, "WWR filed a 'Notice of Judgment Lien on Real Estate' in Bullitt District Court," listing among the amounts owed $126.50 in costs. *Id.* There, the Court concluded that Hawksley pled sufficient facts to establish that "WWR did not follow the proper procedure to recover its costs. Instead, once it obtained a judgment against Hawksley entitling it to collect 'its court costs incurred,' . . . WWR proceeded directly to the Bullitt County Clerk's office with its judgment lien." *Id.* at *5. Therefore, when WWR asserted in its judgment lien that it was entitled to the costs incurred in the state court action, it attempted to collect a cost that it had not yet been properly awarded. *Id.* at *5– 6. WWR also included in the $126.50 amount a $13.00 judgment lien recording fee, a cost which, under Kentucky law, it was unclear was recoverable.

Midland's actions in this case are quite distinguishable from the defendant's in *Hawksley*. Here, the parties agree that Midland filed a CR 54.04 Bill of Costs with regard to the $228.00 worth of "court costs [it had incurred] as of the date of judgment" in state court. [*See* DN 1-2; DN 10-2.] That is all that was required of Midland with regard to its prejudgment costs. With regard to the post-judgment garnishment costs, the Default Judgment awarded Midland its "costs for the filing of any executions, including . . . garnishments, which may issue hereafter." [DN 1-2 at 2.] As the Court explained above, this language logically extends to include both $10.00 fees, and Midland was not required to file a CR 54.04 bill of costs to obtain the $20.00 in garnishment expenses.

15

Moreover, here, is not "unclear" as to whether the garnishment costs are recoverable under Kentucky law, as it was in *Hawksley* with regard to the lien recording fee. *See Hawksley*, 2017 WL 63033, at *6 (Noting that whether a lien recording fee is recoverable "a novel question of Kentucky law, and neither the Court nor the parties are aware of any Kentucky case passing upon the issue.") Rather, Kentucky law expressly requires that a $10.00 fee be paid to the clerk, CR 3.02(2)(i), and $10.00 fee be paid to the garnishee, Ky. Rev. Stat. Ann. § 425.501(3). Section 425.501 also provides that "[t]he order of garnishment shall be served in accordance with the Rules of Civil Procedure." *Id.* § 425.501(8). As the Court noted above, the Kentucky Rule of Civil Procedure governing post-judgment garnishments is CR 69.02, which specifies how post-judgment garnishment orders are to be served on garnishees and states that "*Expenses shall be recoverable as costs.*" Ky. CR 69.02(1) (emphasis added). Here, therefore, it is clear that garnishment costs are recoverable under Kentucky law.

In sum, the Court finds unpersuasive Ham's argument that Midland failed to follow mandatory CR 54.04 procedures with regard to its post-judgment garnishment costs, and therefore that it was not legally entitled to collect those costs. To the contrary, the Court agrees that CR 54.04's bill of costs procedures apply only to obtaining prejudgment costs.

4. **Finality of the State Court Judgment**

Fourth, Ham asserts that the Default Judgment award of "costs for the filing of any executions . . . which may issue hereafter" is effectively an award of "future costs" such that the state court judgment did not become final.[2] Ham argues, therefore, that Midland never became

---

[2] Midland argues that this argument is also barred by the *Rooker-Feldman* doctrine. [DN 11 at 7–9.] However, Ham's argument in this regard does not "complain[] of injuries caused by [the] state-court judgment," nor does it "invit[e] district court review and rejection of th[at] judgment[]." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Here, Ham does not argue that the state court erred by allegedly awarding "future costs." Instead, Ham merely contends that Midland acted prematurely by attempting to enforce that award before it was "final." Therefore the Court does not find that its consideration of this argument is barred by the *Rooker-Feldman* doctrine.

legally entitled to collect its garnishment costs because no final judgment as to those costs was ever issued. [DN 10 at 21–23.] In making this argument, Ham relies on *Francis v. Crounse Corp.*, 98 S.W.3d 62 (Ky. Ct. App. 2002). [*Id.* at 21.] In that case, the Kentucky Court of Appeals determined that a trial court judgment was not final when it left the issue of attorney fees to be resolved at a later date. *Francis*, 98 S.W.3d at 67–68.

Contrary to Ham's argument, however, Kentucky law pertaining to awards of costs recognizes that judgments are final even if the specific amount of costs has yet to be determined. Pursuant to CR 54.04(2), once a party files a bill of costs following a judgment in its favor, "[i]f within five days after such service no exceptions to the bill are served on the prevailing party, the clerk shall endorse on the face of the judgment the total amount of costs recoverable as a part of the judgment." Ky. CR. 54.04(2). In such cases, "a timely filed bill for costs is added to the judgment as a ministerial matter by the court clerk," but does not change the fact that the underlying judgment is final. *See Hunt v. N. Am. Stainless*, No. 2012-CA-000098-MR, 2014 WL 1881891, at *5 (Ky. Ct. App. May 9, 2014) (VanMeter, J., dissenting on other grounds).

If the losing party does object to the prevailing party's bill of costs, those "[e]xceptions shall be heard and resolved by the trial court in the form of a supplemental judgment." *Id.* "The trial court's involvement thus is triggered only by an exception by the losing party." *Harris v. Camp Taylor Fire Prot. Dist.*, 303 S.W.3d 479, 481 (Ky. Ct. App. 2009). However, the trial court's "retained supplemental judgment jurisdiction" in the event exceptions are filed to a bill of costs "has nothing to do with the lost jurisdiction to amend or supplement the *final judgment*," which still applies. *Brett v. Isaac*, No. 2008-SC-000712-MR, 2009 WL 2707092, at *2 (Ky. Aug. 27, 2009) (emphasis added). In other words, the mere fact that a bill of costs and a supplemental judgment may later be filed does not interfere with the finality of the original judgment. *See id.*

17

Indeed, in *Brett*, the Supreme Court of Kentucky explained that "after *final judgment* was entered" in the case, the losing party "received a bill for costs." *Id.* at *1 (emphasis added). So, even in cases when prejudgment costs are left to be determined by a bill of costs, the judgment awarding the undetermined amount of costs is final nonetheless. *See id.* at *1–2. It is especially clear that the Default Judgment in this case was final, however, because, as the Court determined above, Midland was *not* required to file a bill of costs with regard to its post-judgment garnishment expenses. Therefore, leaving nothing left to be determined as to the costs of executing the judgment, the Default Judgment was certainly final with regard to its award of those post-judgment costs.

Finally, the Court finds the *Francis* case, on which Ham relies, to be distinguishable. There, the court explained that "the determination of whether the judgment is final when the amount of the attorney fees has not been resolved should rest on whether attorney fees were part of the claim or whether they were collateral to the merits of the action." *Francis*, 98 S.W.3d at 67. In that case, the plaintiff brought suit under the Kentucky Civil Rights Act, which "provides in pertinent part that '[t]he court's order or judgment shall include a reasonable fee for the plaintiff's attorney of record and any other remedies contained in this chapter.'" *Id.* at 65 (quoting Ky. Rev. Stat. Ann. § 344.450). Because, pursuant to statute, attorney fees were a part of the plaintiff's underlying claim, the *Francis* court determined that "the attorney fees claim [w]as [not] collateral to the civil rights violation claim." *Id.* at 67. Midland argues, and the Court agrees, that "*Francis* does not render a default judgment that awards future garnishment costs 'not final.' To the contrary, the general award of future post-judgment garnishment fees is by definition, 'collateral to the merits.' At the time a default judgment is entered, the post-judgment fees have not yet been incurred, and may never be incurred if the judgment is immediately paid."

18

[DN 11 at 8 (internal citations omitted).] Therefore, it follows logically that, unlike in *Francis*, Midland's garnishment expenses in this case were not part of its initial claim against Ham, but were collateral to the merits.

In sum, "after drawing all reasonable inferences from the allegations in the complaint in favor of [Ham], the complaint still fails to allege a plausible theory of relief." *Garceau*, 572 F. App'x. at 371 (citing *Iqbal*, 556 U.S. at 677–79). Therefore, Ham's claims must be dismissed.

## CONCLUSION

For the reasons discussed in detail herein, Midland's motion to dismiss, [DN 7], is **GRANTED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

Date:

cc:  Counsel